

September 30, 2024

Hon. Nina Gershon  
United States District Court  
for the Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

VIA *ECF*

Re: Case No. 24-cv-01549; *Roosevelt Road Re, Ltd. v. Hajjar, et al.*; United States District Court, Eastern District of New York

Dear Judge Gershon:

Pursuant to Court Rule 3A, Plaintiffs respectfully make this global response to the letters submitted by Defendants, Dr. Andrew Merola, MD (Doc. 83); Siddhartha Sharma, SPM (Doc. 90); Gorayeb & Associates, PC and Christopher J. Gorayeb (Doc. 85); Kolb Radiology, PC and Thomas M. Kolb, MD (Doc. 87); Jospeh Weinstein, DO PC and Joseph Weinstein DO (Doc. 89); Lenox Hill Radiology and Medical Imaging Associates, PC (Doc. 82); Surgicare of Westside, LLC (Doc. 84); Fogelgaren, Forman & Bergman LLP, Eric Fogelgaren, Esq. and Jonathan Forman, Esq. (Doc. 86); New York Ortho Sports Medicine & Trauma, PC, Jeffrey Kaplan, MD, Matthew P. Grimm, MD, and Adrian Puia, RPT (Doc. 88); and Surgicore Fifth Avenue Surgery Center, LLC, A/K/A Fifth Avenue Surgery Center LLC (Doc. 96) (hereinafter "Defendants" collectively).

Plaintiffs filed a Complaint on March 1, 2024 alleging that Defendants engaged in an elaborate, multifacted scheme to obtain workers' compensation benefits and litigation settlements based on false and misleading medical documentation that induced Plaintiff insurance companies into funding such fraudulent claims. Defendants submitted Rule 3(A) letters and thereafter Plaintiffs filed their *First Amended Complaint* on August 7, 2024 (the "FAC"). Defendants have filed their letters pursuant to Rule 3(A) in response to the FAC, and Plaintiffs respond to same herein.

Plaintiffs respectfully submit that any discussion of a motion for sanctions is improper, given that neither counsel's prior letters to the undersigned or the Court nor a pre-motion hearing abrogates the requirement that Defendants first serve a formal stand-alone motion for sanctions and give Plaintiffs the opportunity to withdraw or appropriately correct any defect within twenty-one days of service before Defendants can file or present such motion to the Court. *See* Fed. R. Civ. P. 11(c)(2). A letter will not suffice. *See Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy*

PENNSYLVANIA | NEW YORK | NEW JERSEY | DELAWARE  
WEST VIRGINIA | FLORIDA | TEXAS

The Willis Law Group, PLLC | 1985 Forest Lane, Garland, Texas 75042  
(214) 736.9433 – Main | (214) 736.9994 - Facsimile  
TheWillisLawGroup.com | E-Service Address: service@thewillislawgroup.com

*& Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012); *see also Castro v. Mitchell*, 727 F. Supp. 2d 302, 307-08 (S.D.N.Y. 2010).

In any event, Plaintiffs request that Defendants' request for pre-motion conference be denied as their letters to the Court contain material legal and factual errors.

1. **The Affidavits and the separate Pattern of Racketeering Activity – Predicate Acts are properly attached as Exhibits to the First Amended Complaint**

Certain Defendants seek to strike affidavits of medical providers attached to the FAC as Exhibits 1 through 6 and a statement of predicate acts constituting the pattern of racketeering activity attached as Exhibit 7, all as referenced in the FAC, contending they are not written instruments under Rule 10(c) or are improper expert reports. *See e.g.*, Doc. 83, at 2; Doc. 86, at 2. Contrary to these objections, while none of the exhibits purport to be written instruments, they do constitute "'statements or documents incorporated in [the Complaint] by reference.'" *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 98 n.13 (2d Cir. 2017) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

The FAC sets forth detailed factual averments regarding the medical diagnostic procedures, medical services and treatments also described in the affidavits, as referenced in the FAC, which is sufficient. There is no question that Plaintiffs relied upon the factual contents of the affidavits in preparing the complaint. The Court need not assume the truth of the opinions expressed by the affiants but certainly is permitted to consider their summaries of medical records that also are referenced in the FAC.

Defendants also seek to strike the allegations contained in the Pattern of Racketeering Activity – Predicate Acts attached to the FAC as Exhibit 7. For starters, Defendants' request is disingenuous in light of Defendants' prior argument that the original Complaint was too long and "is hardly the 'short and plain statement' required by Rule 8(a)(2)." Rather than include the subparagraphs a. through oooo. in the body of the FAC, the subparagraphs are set forth in an exhibit attached to the FAC and referenced in ¶ 166 to facilitate review of the specific predicate acts alleged to allow the Defendants to readily understand which factual allegations of predicate acts are asserted against each of them. The Pattern of Racketeering Activity is akin to RICO statements routinely filed in the Southern District of New York and includes facts relied upon to assert the RICO claim, which facts could just as readily be included in the body of the FAC. Defendants' argument puts form over function and violates Fed. R. Civ. P. Rule 1 that all rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

2. **The Plaintiffs have Standing.**

Defendants assert that Plaintiffs lack standing because they have not suffered a cognizable injury and have not cured this deficiency by adding new plaintiffs that have standing. *See e.g.*, Doc. 83, at 2. Defendants' argument ignores allegations of specific and actual injury to Plaintiffs stemming from Defendants' fraud scheme involving the Claimants.

First, as alleged in the FAC, Plaintiff Tradesman "made substantial payments and sustained significant damage in connection with its management of the policies that cover the various claims and lawsuits filed and prosecuted by the Legal Service Defendants as part of the Fraud Scheme." *See* Doc. 79, at ¶ 181; *see also id.* at ¶ 183.b (seeking damage for expenses incurred in connection with the claims submitted by Defendants as part of the fraud scheme). These payments made by Tradesman were proximately caused by the racketeering activity detailed in the FAC, which utilized a fraudulent treatment protocol to manufacture a treatment record before the New York State Workers' Compensation Board ("the Board") in order to seek reimbursement through the workers' compensation system and to obtain windfall recoveries brought against the general liability claims and workers' compensation claims for which Tradesman was responsible. *See id.*, at ¶¶ 180, 181 & 183.b.

Second, Defendants err in arguing that Roosevelt, as a "reinsurer," lacks standing because it is not directly liable to the insured Claimants. To have standing, Roosevelt need not be liable to the insured Claimants; rather a cognizable RICO injury simply requires Roosevelt's injury to be "by reason of" the substantive RICO violation. *See* 18 U.S.C. § 1964(c). The FAC alleges that by reason of Defendants' Fraud Scheme (including wire fraud, mail fraud and bribery), Roosevelt "has incurred expenses paid as reimbursement to primary insurers providing coverage for the claims and lawsuits filed and/or prosecuted by the Legal Defendants on behalf of Claimants." *See* Doc. 79, at ¶ 171. The FAC also alleges that "[b]ut for Defendants' perpetration of the Fraud Scheme, Roosevelt's expenses **paid** as reimbursement to primary insurers would be less because the Claimants' injuries, if any, would be less severe and the medical services necessary to treat any accident related injury, if any, would [be] less significant, resulting in lower settlement value of such claims and lawsuits and thus, less litigation expenses." *Id.* at ¶ 172 (emphasis added). These payments made by Roosevelt were proximately caused by the racketeering activity detailed in the FAC and Roosevelt seeks damage "for the payments [Roosevelt] made as reimbursement for payments made directly to the Defendants or to others due to Defendants' pattern of fraudulent conduct…."

Relevant Supreme Court precedent has underscored that RICO injury pursuant to 18 U.S.C. §1964(c) are determinable not through any "bright-line rule" but through a fact-intensive contextual test, as being "true to the statute's meaning." *Yeziazaryan v. Smagin*, 599 U.S. 533, 548 (2023). Moreover, "where an action involves multiple plaintiffs, Article III is satisfied so long as at least one plaintiff – and not necessarily the same one – has standing with respect to each claim." *Congregation Rabbinical College of Tartikov, In. v. Village of Pomona, NY*, 945 F.3d 83, 109 (2d Cir. 2019). Here, the FAC sufficiently asserts RICO injury to Tradesman and Roosevelt to support standing. Defendants cannot, on the one hand, ignore the factual allegations of specific injury to Tradesman and Roosevelt caused by reason of Defendants' fraud scheme and, on the other, argue that Plaintiffs fail to sufficiently plead RICO injury to support standing.

### 3. Plaintiffs' *First Amended Complaint* pleads the requisite elements of RICO.

Defendants generally declare that the FAC fails to plead necessary elements of RICO and otherwise fails to allege fraud with "particularity." Plaintiffs have provided a detailed outline and

chart delineating a multitiered fraudulent scheme consisting of multilayered fraudulent enterprises and specific racketeering activity engaged in to achieve same. Specifically, the FAC identifies the association-in-fact enterprise, naming each specific Defendant as well as the relationships amongst the various Defendants in conducting the affairs of the enterprise. *See* Doc. 79, at ¶ 28, Figure 1. The FAC describes how the Defendants conducted the affairs of the enterprise to carry out the fraud scheme to recruit workers into staging fake construction accidents or to claim fake injuries and receiving a myriad of medical services, which are fraudulently documented as medically necessary or causally related to the accident by the Medical Provider Defendants, and used by the Legal Service Defendants to prosecute workers' compensation claims and personal injury lawsuits and to inflate settlement value. *See id.*, at ¶¶27, 30-45.

It also describes in detail the pattern of predicate acts in which each Defendant engaged in connection with the operation or management of the affairs of the enterprise, by identifying specific transmissions by mail, facsimile or email falsely attesting to the construction accident, the existence and/or the extent of the Claimants' injuries, and the necessity of Claimants' medical treatment. *See id.*, at ¶ 166. For example, Defendant Kaplan on or about October 16, 2020, transmitted by mail, facsimile or email, his report of October 16, 2020 examination falsely noting left rotator cuff and requesting authorization for surgery. *See* Doc. 79-7, at ¶ f. In connection with a small sample (out of hundreds of lawsuits) of Claimants involved in the fraud scheme, Defendant Merola is alleged to have engaged in 5 predicate acts from March 2021 to July 2023, including transmitting fraudulent medical documentation of spine fusion surgeries, submitting claim form for reimbursement for spine laminectomy, requesting authorization from the Board for lumbar surgery, which was unnecessary and/or was not causally related to the alleged accident, and transmitting pre-op clearance for lumbar surgery. *See id.*, at ¶¶ j, eee, fff & hhh.

4. **This action is not barred by the Statute of Limitations**

Certain Defendants urge dismissal of the FAC, in part, based on the four-year statute of limitations, urging that the Court should disregard all alleged predicate acts prior to March 1, 2020. *See, e.g.* Doc. 85, at 2. This argument only applies to Claimant B so even if the Court disregarded entirely all averments about this Claimant, there would be sufficient allegations to make out a plausible claim for relief. Further, the Supreme Court has made clear that fraudulent concealment tolls the running of the statute of limitations in RICO actions. *See Merck & Co. v Reynolds*, 559 U.S. 633, 649 (2010). The FAC pleads that due to Defendants' concealment, Plaintiffs could not have discovered the fraudulent scheme earlier through reasonable diligence. Doc. 79, at ¶ 166. As reflected in the affidavits attached as exhibits, Plaintiffs promptly filed this suit after completing its investigation of possible wrongdoing with the assistance of medical professionals.

5. **The Court should exercise supplemental jurisdiction over any remaining state law claims.**

As for the Defendants' argument that supplemental jurisdiction should not be exercised because all of the federal claims fail, as noted above, the FAC states claims for RICO violations sufficient to support supplemental jurisdiction over state law claims.

### 6. *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943) does not apply.

Defendants' argument that the *Burford* abstention doctrine should somehow apply to bar this action lacks factual or legal merit. The *Burford* abstention is only appropriate when review would raise "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996). Here, while the Board and the workers' compensation law are the vehicles through which the Defendants conduct the alleged racketeering activities, Plaintiffs neither challenge the authority of the Board nor seek to interpret any workers' compensation law. Resolution of this action does not require any interpretation of or change to any state law, and adjudication of this controversy does not compel the Board to exercise its rights pursuant to N.Y. W.C.L. § 123 in any fashion.

Similarly, the New York State Attorney General's ability to pursue fraud does not have any bearing on the rights of private parties to pursue private RICO actions and is entirely irrelevant except perhaps with respect to any qui tam elements.

### 7. Defendants' claims for sanctions are unwarranted and unjustified.

Defendants' argument that a mere "insufficiency of the Plaintiffs complaint(s)" entitles them to sanctions, citing *Kochisarli v. Tenoso,* No. 02-CV-4320, 2006 US Dist. LEXIS 95862 (E.D.N.Y. Mar. 21, 2006), is simply wrong. Not only does *Kochisarli* not stand for that proposition, it is hard to imagine a more distinguishable case. *Kochisarli* is an extreme example of truly sanctionable conduct that met each of the seven (7) factors to be considered in determining whether Rule 11 sanctions was warranted. More importantly, the mere insufficiency of complaint is **not** a factor that can support sanctions; to suggest otherwise misstates the law.

Plaintiffs respectfully request that Defendants' request for a pre-motion conference be denied.

Respectfully submitted,

**THE WILLIS LAW GROUP, PLLC**

By: /s/ *William J. Clay*
    **WILLIAM J. CLAY** *(admitted pro hac)*
    wclay@thewillislawgroup.com
    **MICHAEL A. GRAVES**
    mgraves@thewillislawgroup.com
    **AARON E. MEYER**
    ameyer@thewillislawgroup.com
    **KIRK D. WILLIS** *(admitted pro hac)*

kwillis@thewillislawgroup.com
1985 Forest Lane
Garland, Texas 75042
Telephone: 214-736-9433
Facsimile: 214-736-9994
Service Email: service@thewillislawgroup.com
***ATTORNEYS FOR THE PLAINTIFFS***
**ROOSEVELT ROAD RE, LTD. and**
**TRADESMAN PROGRAM MANAGERS, LLC**