UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

ROOSEVELT ROAD RE, LTD,
TRADESMAN PROGRAM MANAGERS, LLC,

Case No.: 1:24-cv-01549-NG-LB

Plaintiffs,

-against-

JOHN HAJJAR, MD, SURGICARE, LLC, SURGICARE OF
MANHATTAN, LLC, SURGICARE OF WESTSIDE, LLC,
SURGICARE, PC, BORO VENTURES, LLC, SOVEREIGN MEDICAL
GROUP, LLC, SOVEREIGN MANAGEMENT, LLC, REGENT
MEDICAL PROPERTIES, LLC, ANTHONY DeGRADI, WAYNE
HATAMI, FELIKS KOGAN, LEONID TYLMAN, GREGG ROCK,
SIDDHARTHA SHARMA, MD, SURGICORE, LLC, SURGICORE
MANAGEMENT, INC., SURGICORE MANAGEMENT, LLC,
SURGICORE 5th AVENUE, LLC, KTHD INVESTMENT LLC, NY
ORTHO SPORTS MEDICINE & TRAUMA, PC, JEFFREY STONE
KAPLAN, MD, MATTHEW P. GRIMM, MD, ADRIAN PUIA, RPT,
JOSEPH WEINSTEIN DO, PC, JOSEPH WEINSTEIN, DO,
UNIVERSITY ORTHOPEDICS OF NEW YORK, PLLC, STEVEN JOHN
TOULIOPOULOS, MD, CHARLES A. DeMARCO, MD, ANDREW M.
CRUZ, RPA, ANDREW MEROLA, MD, KOLB RADIOLOGY, PC,
THOMAS M. KOLB, MD, LENOX HILL RADIOLOGY AND
MEDICAL IMAGING ASSOCIATES, PC, FOGELGAREN FORMAN &
BERGMAN, LLP, ERIC FOGELGAREN, JONATHAN FORMAN,
ROBERT BERGMAN, GORAYEB & ASSOCIATES, PC,
CHRISTOPHER J. GORAYEB, FRANCISCO PAYANO, SISA PAKARI
CULTURAL CENTER INC., SISA PAKARI CENTRO CULTURAL &
LABORAL, INC. FANNY GUADALUPE, ROLANDO MANZANO
MORENO, CIDEL DEL CARMEN TANDOZA MORENO,

Defendants.

-------------------------------------------------------------------------X

**SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANTS FOGELGAREN,
FORMAN & BERGMAN, LLP, ERIC FOGELGAREN, JONATHAN FORMAN
AND ROBERT BERGMAN IN SUPPORT OF MOTION TO DISMISS**

Of Counsel:
  J. Patrick Carley, III, Esq.

TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP
Seven Skyline Drive
Hawthorne, New York 10532
Telephone: (914) 347-2600
*Attorneys for Defendants Fogelgaren, Forman &
Bergman, LLP, Eric Fogelgaren, Jonathan Forman
and Robert Bergman*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT ..........................................................................................................1

    POINT I --    PLAINTIFFS' ACTION AGAINST BERGMAN MUST
                    BE DISMISSED ..................................................................1

    A.  Standard of Review..................................................................................1

    B.  Plaintiffs Failed to Effect Service of Process ..............................................2

    C.  Plaintiffs Never Served Bergman With The Amended Complaint..............................4

    POINT II --    PLAINTIFFS FAIL TO STATE ANY CLAIMS AGAINST FFB .............4

    A.  Relevant Allegations ..................................................................................4

    B.  Plaintiffs Fail to State a Claim Against FFB for Civil RICO .......................5

        1.  The FAC Fails to Plead That FFB Conducted The Enterprise's Affairs ................5

        2.  The FAC Fails to Plead Predicate Acts of Racketeering Activity .........................7

                i.  Referrals to Medical Providers ......................................................8
                ii.  Dr. Kaplan's Medical Report ..........................................................9
                iii.  Employee Claim Form C-3 .............................................................9
                iv.  Attorneys' Fee Application..............................................................11
                v.  Reports of Injury ..........................................................................11
                 vi.  Receipt of Medical Documentation ...............................................12

    C.  Plaintiffs Fail to State a Claim Against FFB for Civil RICO Conspiracy ..................13

    D.  Plaintiffs Fail to State a Claim Against FFB for Fraud ................................13

    E.  Plaintiffs Fail to State a Claim Against FFB for Unjust Enrichment .........................15

# TABLE OF AUTHORITIES

| CASES | PAGE(S) |
|---|---|

*Avraham v. Lakeshore Yacht & Country Club, Inc.*,
  2016 U.S. Dist. LEXIS 153798 (N.D.N.Y. Nov. 7, 2016) ................................................... 8

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994) ................................................................................................... 7

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.I.*,
  832 F. Supp. 585 (E.D.N.Y. 1993) ...................................................................................... 6

*Carroll v. U.S. Equities Corp.*,
  2019 U.S. Dist. LEXIS 162631 (N.D.N.Y. Sept. 24, 2019) ................................................ 13

*Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*,
  31 A.D.3d 983 (3d Dept. 2006) ........................................................................................... 15

*Curtis & Assocs., P.C. v. Law Officers of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) ............................................................................ 7, 10

*Directv, Inc. v. Lewis*,
  2005 U.S. Dist. LEXIS 8187 (W.D.N.Y. Apr. 29, 2005) .................................................... 8

*D'Orange v. Feely*,
  877 F. Supp. 152 (S.D.N.Y. 1995) ...................................................................................... 8

*Estate of Izzo v. Vanguard Funding, LLC*,
  2017 U.S. Dist. LEXIS 47968 (E.D.N.Y. Mar. 30, 2017) .................................................. 7

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*,
  206 F. Supp. 2d 362 (E.D.N.Y. 2002) ................................................................................ 13

*Gabr Int'l Trading Corp. v. Birdsall*,
  2009 U.S. Dist. LEXIS 129814 (E.D.N.Y. Mar. 6, 2009) .................................................. 2

*Grace Int'l Assembly of God v. Festa*,
  797 F. App'x 603 (2d Cir. 2019) ......................................................................................... 7

*Howard v. Klynveld Peat Marwick Goerdeler*,
  977 F. Supp. 654 (S.D.N.Y. 1997) .................................................................................. 1, 2

*Kashelkar v. Rubin & Rothman*,
  97 F. Supp. 2d 383 (S.D.N.Y. 2000) ..................................................... 8, 10, 11, 14, 15

*Morin v. Trupin*,
  711 F. Supp. 97 (S.D.N.Y. 1989) ........................................................................................ 11

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ................................................................ 5, 6

*Moss v. First Premier Bank*,
   2024 U.S. Dist. LEXIS 174341 (E.D.N.Y. Aug. 2, 2024) ................................... 13

*Nakahara v. Bal*,
   1998 U.S. Dist. LEXIS 825 (S.D.N.Y. Jan. 30, 1998) ......................................... 8

*Nat'l Westminster Bank USA v. Weksel*,
   124 A.D.2d 144 (1st Dept. 1987) ........................................................................ 14

*Nineteen N.Y. Props. Ltd. P'ship v. 535 5th Operating Inc.*,
   211 A.D.2d 411 (1st Dept. 1995) ........................................................................ 15

*Rajaratnam v. Motley Rice, LLC*,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) ............................................................... 7, 13

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) .............................................................................................. 5

*Rusyniak v. Gensini*,
   629 F. Supp. 2d 203 (N.D.N.Y. 2009) ............................................................... 14

*Saluzzo v. Greenbaum*,
   2011 U.S. Dist. LEXIS 166443 (N.D.N.Y. Feb. 4, 2011) ................................... 8

*Sundwall v. Weinstein & Assocs.*,
   1997 U.S. Dist. LEXIS 12702 (D. Conn. Aug. 19, 1997) ................................... 8

*United States v. Pizzonia*,
   577 F.3d 455 (2d Cir. 2009) ............................................................................... 13

*Von Bulow v. Von Bulow*,
   657 F. Supp. 1134 (S.D.N.Y. 1987) .................................................................... 8

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990) ............................................................................... 12

*Wynn v. Household Fin. Realty Corp. of N.Y.*,
   2024 U.S. Dist. LEXIS 182096 (E.D.N.Y. Aug. 21, 2024) .................................. 4

**STATUTES**

18 U.S.C. §1962 ......................................................................................................... 5

CPLR §308(4) ......................................................................................................... 2, 3

Fed. R. Civ. P. 4(e) ..................................................................................................... 2

Fed. R. Civ. P. 4(m) ............................................................................................. 2, 3, 4

Fed. R. Civ. P. 5(a) ..................................................................................................... 4

Fed. R. Civ. P. 9 ......................................................................................... 1, 6, 7, 10

Fed. R. Civ. P. 12 ............................................................................................. 1

Fla. Stat. Ann. §48.031 .................................................................................... 2

New York Workers' Compensation Law §13 .................................................. 8

New York Workers' Compensation Law §13-a .......................................... 9, 15

New York Workers' Compensation Law §13-b ................................................ 9

New York Workers' Compensation Law §13-f ............................................... 15

New York Workers' Compensation Law §24 ............................................ 11, 15

New York Workers' Compensation Law §25 ................................................. 15

New York Workers' Compensation Law §124 ............................................... 10

12 N.Y.C.R.R. §300.2 ..................................................................................... 9

12 N.Y.C.R.R. §300.17 .............................................................................. 11, 15

12 N.Y.C.R.R. §300.37 ................................................................................... 10

12 N.Y.C.R.R. §300.38 ........................................................................ 10, 12, 15

12 N.Y.C.R.R. §302-2.1 ................................................................................... 6

12 N.Y.C.R.R. §323.1 ......................................................................................9

12 N.Y.C.R.R. §325-1.2 ................................................................................. 12

12 N.Y.C.R.R. §325-1.3 ................................................................................. 12

12 N.Y.C.R.R. §325-1.25 ........................................................................... 8, 15

<u>**PRELIMINARY STATEMENT**</u>

This memorandum of law is submitted in support of the motion of Defendants Fogelgaren, Forman & Bergman, LLP, Eric Fogelgaren, Jonathan Forman and Robert Bergman (collectively, "FFB"): (i) pursuant to Fed. R. Civ. P. 12(b)(5), to dismiss the action as to Defendant Robert Bergman ("Bergman") for insufficient service of process; and (ii) pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), to dismiss the Amended Complaint dated August 7, 2024 as to FFB, for failure to state a claim upon which relief can be granted.

Plaintiffs allege in threadbare, conclusory fashion that FFB participated in a scheme to exploit the New York workers' compensation and court systems to commit insurance fraud by representing workers purporting to have been injured in staged construction accidents in claims for benefits before the New York State Workers' Compensation Board ("WCB"). For the reasons discussed below, and in the accompanying Joint Memorandum of Law in Support of Defendants' Motions to Dismiss dated January 22, 2025 ("Joint MOL"), the arguments of which are adopted as if fully set forth herein, Plaintiffs fail to plead any claims against FFB. Moreover, for the reasons discussed below, Plaintiffs failed to effect service of process on Bergman.

<u>**ARGUMENT**</u>

**POINT I:**      <u>**PLAINTIFFS' ACTION AGAINST BERGMAN MUST BE DISMISSED**</u>

**A.**      <u>**Standard of Review**</u>

Pursuant to Rule 12(b)(5), a complaint may be dismissed for insufficient service of process. *Howard v. Klynveld Peat Marwick Goerdeler,* 977 F. Supp. 654, 658 (S.D.N.Y. 1997), *aff'd* 173 F.3d 844 (2d Cir. 1999). Once a defendant challenges the sufficiency of service of process, "the burden of proof is on the plaintiff to show the adequacy of service." *Id.* (citation omitted). Conclusory statements that a defendant was properly served are insufficient to overcome a

defendant's sworn affidavit that he was never served with process. *Id.* (citation omitted). Under FRCP Rule 4(m), the defendant must be served within 90 days after the complaint is filed.

Pursuant to FRCP 4(e), a plaintiff can effect service of process on an individual by following the state law in the state where the district court is located (here, New York) or where service is made (here, Florida), or by delivering a copy of the summons and complaint to the individual personally or "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there."

**B.    Plaintiffs Failed to Effect Service of Process**

Plaintiffs filed the Complaint on March 1, 2024 (ECF 1), and a Summons was thereafter issued by the Court on April 26, 2024. (ECF 16). Plaintiffs' deadline to effect service of the Summons and Complaint, pursuant to FRCP 4(m), expired on May 30, 2024 (*i.e.*, 90 days from March 1, 2024). On December 11, 2024, Plaintiffs filed an Affidavit of Service from an individual named Robert Buckley, sworn to on June 12, 2024 (hereinafter, "Buckley AOS"), whereby Mr. Buckley avers that he served a copy of the Summons and Complaint on Bergman via "nail and mail" service at Bergman's dwelling in Pompano Beach, Florida. (*See* ECF 104).

"Neither the Federal Rules [n]or Florida law…permit service by the 'nail and mail' method." *Gabr Int'l Trading Corp. v. Birdsall*, 2009 U.S. Dist. LEXIS 129814, at *1, n.1 (E.D.N.Y. Mar. 6, 2009); *see* Fla. Stat. Ann. §48.031; FRCP 4(e). New York state law does allow for "nail and mail" service. Pursuant to CPLR §308(4), such service is accomplished, after reasonable due diligence, by affixing the summons to the door of the person's dwelling and then mailing the summons to the person's last known residence by first class mail in an envelope bearing the legend "personal and confidential" that does not indicate the mailing is from an attorney or concerns a lawsuit. *Id.* The affixing and mailing shall "be effected within twenty days

of each other [and] proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such affixing or mailing, whichever is effected later, [and] service shall be complete ten days after such filing[.]" *Id.*

The Buckley AOS states that copies of the Summons and Complaint were affixed to the front door of Bergman's dwelling on May 30, 2024, and that "[f]irst class mailing was completed on June 12, 2024 by depositing the above listed documents in a USPS Mailbox in an envelope marked personal and confidential." (ECF 104). Bergman, however, never received any mailing containing the Summons and Complaint. (*See* Declaration of Robert Bergman dated January 22, 2025 ("Bergman Decl."), ¶9). Notably, the Buckley AOS does not provide any information as to the addressee of the mailed envelope. The failure to make the mailing required by CPLR §308(4) demands dismissal of the action as to Bergman.

Even assuming, *arguendo*, that the mailing was made, Plaintiffs nevertheless failed to comply with the requirement in CPLR §308(4) that proof of service be filed within twenty days of the affixing/mailing. While the mailing was purportedly made on June 12, 2024, Plaintiffs waited until December 11, 2024 to file proof of service (ECF 104), well after the twenty-day deadline to do so expired. *See Howard*, 977 F. Supp. at 660 (improper service where plaintiff failed to file proof of service within twenty days). Plaintiffs also failed to complete service of process within the time period proscribed by FRCP 4(m), which requires service within 90 days after the complaint is filed. Plaintiffs' deadline to serve the Complaint was May 30, 2024. However, Mr. Buckley did not make the purported mailing until June 12, 2024. Moreover, CPLR 308(4) confirms that service is not complete until ten days after proof of service is filed. Because Plaintiffs filed the Buckley AOS on December 11, 2024, service was not deemed complete until December 21, 2024, which is 205 days after the deadline proscribed by FRCP 4(m) expired. Where, as here,

service was not made within 90 days, the Court must dismiss the action. *Wynn v. Household Fin. Realty Corp. of N.Y.*, 2024 U.S. Dist. LEXIS 182096, at *3 (E.D.N.Y. Aug. 21, 2024) ("Among federal courts, there is virtual unanimity that dismissal is mandatory if a defendant is not served within [90] days, unless the plaintiff can show good cause for delay").

**C.** **Plaintiffs Never Served Bergman With The Amended Complaint**

Plaintiffs also failed to serve Bergman with the Amended Complaint dated August 7, 2024 ("FAC"). FRCP 5(a)(1)(B) requires that "the following papers must be served on every party: (B) a pleading filed after the original complaint…." It is undisputed that Bergman had not entered an appearance through counsel or *pro se* as of August 7, 2024.[1] Even if Plaintiffs believed that Bergman was in default (which he was not, since proof of service of the Complaint—the last step of "nail and mail" service under CPLR §308(4))—was not filed until December 11, 2024), FRCP 5(a)(2) required Plaintiffs to serve the FAC on Bergman pursuant to FRCP 4, since the FAC asserted new claims for relief. Bergman was never served with a copy of the FAC by Plaintiffs or any of their agents. (*See* Bergman Decl. ¶¶12-13). Plaintiffs' 90-day deadline to serve the FAC expired on November 5, 2024. *See* FRCP 4(m).

**POINT II:** **PLAINTIFFS FAIL TO STATE ANY CLAIMS AGAINST FFB**

**A.** **Relevant Allegations**

Plaintiffs allege, generally, that FFB participated in the Alleged Fraud Scheme, which was orchestrated and coordinated by Gorayeb (FAC ¶185), by representing injured workers in claims for workers' compensation benefits. (FAC ¶¶36, 49, 59, 70, 81, 101). Plaintiffs allege, generally, that Gorayeb referred the claimants to FFB (FAC ¶95), and that FFB knew the accidents were staged, that the injuries claimed were unrelated to the workplace accident and that the medical

---

[1]     Plaintiffs' counsel was advised on May 1 and 2, 2024, that the undersigned firm was not authorized to accept service on behalf of Bergman. (Declaration of Sean E. Kelly dated January 22, 2025, ¶¶4-5).

treatments recommended/provided were unnecessary or excessive. (FAC ¶46). It is alleged, generally, that FFB referred claimants to the Medical Providers knowing they would provide fraudulent medical documentation asserting that the injuries sustained and medical treatment needed were causally related to the workplace accident. (FAC ¶¶39, 42-43, 102). Plaintiffs allege, generally, that the Medical Providers provided fraudulent medical records to FFB (FAC ¶¶104, 112, 119, 126, 133, 140, 148, 155, 163), and that FFB intentionally submitted or caused to be submitted fraudulent assertions and medical documentation to Plaintiffs, the WCB and others. (FAC ¶¶101, 104). It is alleged, generally, that FFB's unlawful conduct bolstered the value of the workers' compensation claims in order to inflate the value of the benefits and settlements provided by the workers' compensation carriers, thereby resulting in higher profit to FFB. (FAC ¶¶39, 105, 43, 102, 54, 65, 76, 87).

**B.**    **Plaintiffs Fail to State a Claim Against FFB for Civil RICO**

    **1.**    **The FAC Fails To Plead That FFB Conducted The Enterprise's Affairs**

To plead a civil RICO claim, Plaintiffs must allege that FFB "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *18 U.S.C. §1962(c)*. The Supreme Court has interpreted this statutory language to mean that the defendant must have participated "in the operation or management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). However, a person may not be held liable merely for performing tasks that are "necessary and helpful to the enterprise," or for providing "services that ultimately benefit the enterprise." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 302 (E.D.N.Y. 2017) (citation omitted). Instead, "the RICO defendant must have played 'some part in directing [the enterprise's] affairs.'" *Id.* (citation omitted).

Plaintiffs do not—because they cannot—allege that FFB played any part in directing the enterprise's affairs. Instead, the FAC acknowledges that FFB's role was limited to representing

Claimants in workers' compensation claims. (FAC ¶101). This is underscored by Plaintiffs' allegation that FFB only "directed, authorized, coordinated, and controlled the prosecution of Claimants' claims, assigning duties and responsibilities to attorneys/employees of [FFB]" (*id.*), which are the duties that a law firm owes to its client. *See*, *e.g.*, 12 N.Y.C.R.R. §302-2.1. Read generously, the FAC at most pleads that FFB provided legal services to a racketeering enterprise, which Courts have routinely declared is insufficient to satisfy the participation requirement of RICO. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-522 (2d Cir. 1994); *Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.I.*, 832 F. Supp. 585 (E.D.N.Y. 1993); *Moss*, 258 F. Supp. 3d at 307 (citing cases).

This is particularly true given Plaintiffs' failure to allege that FFB had any role in the events preceding their retention by any of the Claimants, such as recruiting the Claimants (FAC ¶30), directing or controlling those who recruited Claimants (*id.* ¶¶30-32), instructing the Claimants to stage accidents and fake injuries (*id.* ¶32), or referring Claimants to legal counsel after they staged accidents. (*Id.* ¶¶33, 35, 95). *See Azrielli*, 21 F.3d at 521-522. And given Plaintiffs' failure to allege that FFB participated in any of the decisions to recruit Claimants, stage accidents, fake injuries, provide false diagnoses or recommend/provide unnecessary and excessive medical treatments. *See Biofeedtrac*, 832 F. Supp. at 591-592. While the FAC alleges that FFB referred Claimants to Medical Providers (FAC ¶¶39, 102), Plaintiffs do not allege that FFB directed the Medical Providers to make diagnoses or render treatments. Instead, the FAC vaguely alleges only that FFB had an "understanding" that the Medical Providers would provide fraudulent medical documentation. (FAC ¶102). This does not satisfy Rule 9, especially since, as discussed below, the referral of clients complaining of physical injuries to medical providers is firmly within the realm of legal services. *See*, *e.g.*, 12 N.Y.C.R.R. §302-2.1.

6

### 2.    <u>The FAC Fails to Plead Predicate Acts of Racketeering Activity</u>

The FAC fails to plead discrete predicate acts on the part of FFB necessary to constitute "racketeering activity." Plaintiffs allege, generally, that FFB violated the mail and wire fraud statutes by knowingly receiving and transmitting documents that contained assertions of construction accidents, injuries and medical treatments that FFB knew or reasonably should have known were false. (FAC ¶¶101, 104). Specifically, Plaintiffs identify five predicate acts of racketeering activity involving the firm, Forman and Bergman (*see* FAC Ex. 7 ¶¶a, l, o, oo, lll), and eleven predicate acts involving Fogelgaren. (*Id.* ¶¶a, l, o, s, z, oo, pp, ccc, iii, lll, mmm).

"Given the routine use of mail and wire communications in business operations,…'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019). As fraud-based predicates, wire fraud and mail fraud "must be pleaded with particularity in accordance with Rule 9(b)." *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 68 (E.D.N.Y. 2020). This particularity requirement extends "to each defendant." *Id.* Scrutiny of the predicate acts here confirms that the FAC fails to allege that FFB engaged in any racketeering activity.

The legitimate conduct of attorneys in representing their clients in pending litigation cannot constitute predicate acts for the purposes of RICO. *See Curtis & Assocs., P.C. v. Law Officers of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010) ("this court joins a long line of cases in finding, as a matter of law, that the 'litigation activities' pleaded in the Complaint cannot constitute predicate acts of the purposes of RICO"); *Estate of Izzo v. Vanguard Funding, LLC*, 2017 U.S. Dist. LEXIS 47968 (E.D.N.Y. Mar. 30, 2017) ("RICO claim fails because the service and filing of litigation documents in the Foreclosure Action cannot plausibly support a

cognizable claim"); *Avraham v. Lakeshore Yacht & Country Club, Inc.*, 2016 U.S. Dist. LEXIS 153798 (N.D.N.Y. Nov. 7, 2016) ("use of mail and wire to conduct allegedly fraudulent 'litigation activities' is insufficient to establish predicate acts of racketeering"); *Kashelkar v. Rubin & Rothman*, 97 F. Supp. 2d 383, 393 (S.D.N.Y. 2000); *Saluzzo v. Greenbaum*, 2011 U.S. Dist. LEXIS 166443, at *7-8 (N.D.N.Y. Feb. 4, 2011) (collecting cases); *Nakahara v. Bal*, 1998 U.S. Dist. LEXIS 825, at *24 n.7 (S.D.N.Y. Jan. 30, 1998) (collecting cases); *Directv, Inc. v. Lewis*, 2005 U.S. Dist. LEXIS 8187, at *22 (W.D.N.Y. Apr. 29, 2005); *D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y. 1995); *Von Bulow v. Von Bulow*, 657 F. Supp. 1134, 1145 (S.D.N.Y. 1987); *Sundwall v. Weinstein & Assocs.*, 1997 U.S. Dist. LEXIS 12702, at *4 (D. Conn. Aug. 19, 1997).

### i.    <u>Referrals to Medical Providers</u>

Four predicate acts, alleged against all FFB defendants, involve the referral of Claimants A – D to the Medical Providers for diagnosis and treatment of medical conditions purportedly caused by injury during the course of the Claimants' employment. (FAC Ex. 7 ¶¶a, l, oo, lll). As an initial matter, the FAC also alleges, repeatedly, that it was Gorayeb who referred the Claimants to the Medical Providers. (*Id.*; *see also* FAC ¶¶39, 96, 48, 58, 69, 80). Even accepting as true the allegations that FFB referred the Claimants to the Medical Providers, Plaintiffs do not allege that such referrals were made using the mails or wires (*see* FAC Ex. 7 ¶¶a, l, oo, lll), and, as such, Plaintiffs have failed to plead that these acts violated the mail or wire fraud statutes.

Even if the FAC does allege that FFB used the mails or wires to refer the Claimants to Medical Providers, Plaintiffs' classification of the referrals as racketeering activity fails. The New York Workers' Compensation Law ("WCL") not only guarantees injured construction workers medical treatment, *see* WCL §13; 12 N.Y.C.R.R. §325-1.25(a)(1), but requires a claimant to substantiate his/her injuries with reports and testimony from his/her attending physicians. *See*, *e.g.*,

WCL §13-a(4). The WCL also mandates that claimants treat with physicians authorized by the WCB to render medical care. *See* WCL §§13-a(1), 13-b; 12 N.Y.C.R.R. §§300.2, 323.1. The referral of clients complaining of workplace injuries to medical providers approved by the WCB is a routine litigation activity that quite simply does not constitute a RICO predicate act.

### ii.     Dr. Kaplan's Medical Report

One predicate act, alleged against all FFB defendants, involves faxing to the WCB a medical report prepared by Dr. Kaplan. (FAC Ex. 7 ¶o). Plaintiffs allege that the medical report notes Claimant B's post traumatic cervical pain with symptoms of cervical radiculopathy and left knee pain and refers Claimant B for an MRI (*Id.*), but do not explain how that information was false or allege that FFB had knowledge of the falsity or a reckless disregard for the truth. (*Id.*). Indeed, the mere suggestion that FFB, who neither conducted a medical examination of Claimant B, nor was qualified to do so, was capable of knowing whether Dr. Kaplan's diagnosis was incorrect, is laughable.

Moreover, FFB's submission of medical reports to WCB was a routine litigation activity, as the WCL requires that a claimant's attending physician prepare and submit medical reports substantiating the claimant's injuries and requesting authorization for treatments. *See* WCL §13-a(4); www.wcb.ny.gov/content/main/Workers/health-care.jsp ("Your health care provider is required to write reports about your treatment and send those reports to the Board and to the workers' compensation insurer…").

### iii.     Employee Claim Form C-3

Two predicate acts, alleged against Fogelgaren only, involve the electronic submission to the WCB of an Employee Claim Form C-3 in connection with Claimants C and D. (FAC Ex. 7 ¶¶pp, mmm). It is alleged that in the Form C-3, Fogelgaren "falsely attest[ed] to the construction

accident, the existence and/or extent of Claimant [C and D]'s injuries, and the necessity of Claimant [C and D]'s medical treatment." (*Id.*).

As an initial matter, Plaintiffs do not provide adequate detail of the statements in the Form C-3 that they contend are false. The bland allegation that Fogelgaren "falsely attest[ed]" to the accident, injuries and medical treatment leaves the door open to numerous possible inferences. Are Plaintiffs alleging that Fogelgaren falsely attested that the accident happened, or that the accident did not happen as described in the Form C-3, or something else? Are Plaintiffs alleging that Fogelgaren falsely attested that the injuries were sustained in the accident, or that the injuries sustained were not as described in the Form C-3, or something else, and are Plaintiffs referring to all of the injuries identified in the Form C-3, or only some, and if so, which ones? Are Plaintiffs alleging that the medical treatment identified in the Form C-3 was not actually received, or was not needed, or something else? Moreover, while Plaintiffs allege, generally, that Fogelgaren represented workers who staged accidents and feigned injuries (FAC ¶46), Plaintiffs do not allege, specifically, that Fogelgaren knew that to be the case with respect to Claimants C and D, let alone knew that at the time the Form C-3s were filed. Plaintiffs clearly failed to satisfy Rule 9.

In any event, the filing of a Form C-3, a *pro forma* document created by the WCB, is a routine litigation activity, as the WCL requires the submission of a Form C-3 to initiate a workers' compensation claim. *See* WCL §124(1); 12 N.Y.C.R.R. §§300.37, 300.38(d); www.wcb.ny.gov/content/main/Workers/file-claim.jsp (instructing claimants "you should also file an *Employee Claim (Form C-3)* with the Board; this is how you notify the Board of your injury") (emphasis in original). Even if the statements therein were false, and Fogelgaren knew of same, the federal RICO statute was not meant to usurp underlying legitimate state court litigation. *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 173-174 (vague allegations of "phony" and "frivolous" litigation and

"deceit of court" not RICO predicate acts); *Kashelkar*, 97 F. Supp. 2d at 392-393 (transmission of "falsified" legal papers not predicate acts); *Morin v. Trupin*, 711 F. Supp. 97, 106 (S.D.N.Y. 1989).

### iv.     Attorneys' Fee Application

One predicate act, alleged against Fogelgaren only, involves the electronic submission to the WCB of an application for attorneys' fees. (FAC Ex. 7 ¶ccc). It is alleged that in the fee application, Fogelgaren "falsely attest[ed] to the construction accident, the existence and/or extent of Claimant [C]'s injuries, and the necessity of Claimant C's medical treatment." (*Id.*). Plaintiffs, however, mischaracterize the fee application. The fee application referenced by Plaintiffs is a *pro forma* document created by the WCB, and the attestation therein states, in pertinent part, that "I certify to the best of my knowledge that (a) the information included in this fee application is accurate…." (Declaration of Eric Fogelgaren dated January 22, 2025 ("Fogelgaren Decl."), Exh. "G"). The information contained in the fee application relates only to the legal services provided by FFB to Claimant C in the workers' compensation proceeding. (*Id.*). There is no mention of— and thus no attestation concerning—the construction accident, the injuries, or the necessity of medical treatment. (*Id.*). In any event, the submission of fee applications is a routine litigation activity in workers' compensation proceedings, *see* WCL §24; 12 N.Y.C.R.R. §300.17, and does not constitute a predicate act. *Kashelkar*, 97 F. Supp. 2d at 393 (using mails to send invoices for legal services in pending litigation is not a violation of the mail fraud statute).

### v.     Reports of Injury

Three acts, alleged against Fogelgaren only, involve the purported electronic submission to the WCB of Reports of Injury ("ROI") in connection with Claimants B and C, whereby Fogelgaren "falsely attest[ed] to the construction accident, the existence and/or extent of Claimant [B and C]'s injuries, and the necessity of Claimant [B and C]'s medical treatment." (FAC Ex. 7

¶¶s, z, iii). However, the ROIs were filed by the primary workers' compensation insurer, not Fogelgaren (or FFB). *See* Fogelgaren Decl. Exhs. "B," "C"; 12 N.Y.C.R.R. §300.38(a); www.wcb.ny.gov/content/main/Employers/insurance-carrier-responsibilities.jsp ("[t]he insurer files the appropriate First Report of Injury (FROI) or Subsequent Report of Injury (SROI) transaction with the Board indicating either that payment has begun or the reasons why payments are not being made"). Thus, these are not predicate acts attributable to FFB.

### vi.     Receipt of Medical Documentation

Plaintiffs also identify 65 predicate acts in which it is alleged simply that "upon information and belief" a Medical Provider caused a medical report and/or bill to be transmitted by mail, fax or email to Fogelgaren, Forman and/or Bergman. (*See* FAC Ex. 7). Although a "pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). As discussed in the Joint MOL, Point III(A)(2)(a)(*Third*), Plaintiffs have failed to adequately explain how these medical reports and bills were fraudulent. Plaintiffs have similarly failed to explain how the transmission of these medical reports and bills to Fogelgaren, Forman and/or Bergman was in furtherance of the Alleged Fraud Scheme. Nor can they, as Plaintiffs acknowledge that the Medical Providers submitted the medical reports and bills directly to the WCB. 12 N.Y.C.R.R. §§325-1.2, 325-1.3(a). Fogelgaren, Forman and/or Bergman's receipt of copies of the medical reports and bills was routine litigation activity.

In light of the foregoing, Plaintiffs have failed to allege a single predicate act of wire or mail fraud by FFB sufficient to establish racketeering activity as to FFB. Instead, Plaintiffs' claims run headlong into "the overwhelming weight of authority [that] bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities as predicate

racketeering acts." *Rajaratnam*, 449 F. Supp. 3d at 69, *citing Carroll v. U.S. Equities Corp.*, 2019 U.S. Dist. LEXIS 162631 (N.D.N.Y. Sept. 24, 2019).

**D.**     <u>Plaintiffs Fail to State a Claim Against FFB for Civil RICO Conspiracy</u>

A RICO conspiracy claim "should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002). This is significant because "an agreement to commit specified predicate acts" is not enough to establish a RICO conspiracy. *Moss v. First Premier Bank*, 2024 U.S. Dist. LEXIS 174341 (E.D.N.Y. Aug. 2, 2024) (quoting *United States v. Pizzonia*, 577 F.3d 455, 464 (2d Cir. 2009). The FAC alleges simply that "Fogelgaren Defendants and Gorayeb Defendants had an agreement and understanding that Fogelgaren Firm would represent Claimants in workers' compensation claims and Gorayeb Firm would represent Claimants in personal injury lawsuits, in furtherance of the Fraud Scheme." (FAC ¶37). The FAC does not, however, allege when FFB entered into the agreement or what the terms of the agreement were, which is fatal to Plaintiffs' RICO conspiracy claim against FFB. Moreover, the claim against FFB fails because the alleged conspiracy, at best, involved an agreement to commit the same substantive RICO violations that, as discussed above and in the Joint MOL, are insufficiently plead.

**E.**     <u>Plaintiffs Fail to State a Claim Against FFB for Fraud</u>

The FAC fails to plead the elements of a claim for common law fraud against FFB. First, while the FAC purports to identify 11 misrepresentations made by FFB (*see* FAC Ex. 7 ¶¶a, l, o, s, z, oo, pp, ccc, iii, lll, mmm), those "misrepresentations" were not plead with particularity, were expressly refuted by documentary evidence and/or were improperly attributed to FFB, as discussed in Points II(B)(2)(i) – (vi) above. Moreover, with respect to the Form C-3 filed on behalf of

Claimants C and D, it is noted further that FFB attested only that:

> I certify to the best of my knowledge, information and belief, formed after an inquiry reasonable under the circumstances, that the allegations and other factual matters asserted above have evidentiary support, or are likely to have evidentiary support after a reasonable opportunity for further investigations or discovery.

(Fogelgaren Decl. Exhs. "F," "H"). The subsequent decisions by the WCB awarding wages and authorizing medical treatments to the Claimants establishes that evidentiary support for the accident, injuries and treatments identified in the Form C-3 not only existed but was furnished to the WCB. Even if that evidentiary support turns out to have been false, the FAC does not contain any plausible allegations that FFB knew they were false. After all, FFB, like the WCB, relied upon the Claimants and Medical Providers for the evidentiary support, and it is well-settled that an agent (*i.e.*, an attorney) is not personally liable for false representations made on behalf of the principal (*i.e.*, a client) as long as they were innocently made. *See Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 224 (N.D.N.Y. 2009) ("agent's good-faith reliance on information given to the agent from his or her principal…is a defense to a claim that the agent acted intentionally in committing fraud").

Second, the FAC does not include any plausible allegations that FFB communicated with the Plaintiffs. Rather, FFB's alleged misrepresentations were made, if at all, to the WCB, employers and/or primary workers' compensation carriers. It is well-settled that a plaintiff has no standing to complain about alleged misrepresentations made to others. *See Kashelkar*, 97 F. Supp. 2d at 394; *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 149 (1st Dept. 1987) ("no cause is stated against the law firm alone for fraud…because there is no allegation anywhere in the complaint that the firm made any representation, fraudulent or otherwise, to plaintiff").

Third, and most fatal, Plaintiffs cannot plausibly allege that they detrimentally relied on FFB's alleged misrepresentations. As discussed in the Joint MOL, Point IV(A), the primary workers' compensation carriers "controverted" the Claimants' workers' compensation claims by,

among other things, retaining their own medical providers to conduct IMEs of the Claimants. *See* Fogelgaren Decl. ¶¶8, 12, 19 & Exhs. "A," "D," "I"; *see also* WCL §§13-a(4)(b), 25(2); 12 N.Y.C.R.R. §§300.38, 325-1.25(c)(6). Plaintiffs could not have reasonably relied on FFB's purported misrepresentations when their primary carriers disputed same in the proceedings before the WCB. Moreover, a plaintiff cannot plead reliance on alleged "misrepresentations" made in legal papers in the course of adversary litigation. *Kashelkar*, 97 F. Supp. 2d at 395 (citing *Nineteen N.Y. Props. Ltd. P'ship v. 535 5th Operating Inc.*, 211 A.D.2d 411, 412-13 (1st Dept. 1995) ("[t]he only fraud alleged is with respect to statements made in the complaint and in support of Plaintiffs motion; there could be no detrimental reliance on such statements")).

## F.    Plaintiffs Fail to State a Claim Against FFB for Unjust Enrichment

The FAC fails to plead a claim for unjust enrichment against FFB. The essence of unjust enrichment is that one party is in possession of money or property that rightly belongs to another. *Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*, 31 A.D.3d 983, 988 (3d Dept. 2006). However, contrary to Plaintiffs' allegation that payments were made to FFB for distribution to Claimants (FAC ¶103), the WCL requires that payments be made directly to the claimants and medical providers. WCL §§25(1)(a), 13-f(1). Thus, the only money that FFB received was the attorneys' fees earned for representing claimants in the workers' compensation claims. Of course, FFB's fees are specifically proscribed (and restricted) by statute. *See* WCL §24(2); 12 N.Y.C.R.R. §300.17. More importantly, every payment to FFB for attorneys' fees was specifically authorized by the WCB, after receipt, review and approval of a fee application submitted by FFB. *See* WCL §24(2); 12 N.Y.C.R.R. §300.17; *see*, *e.g.*, Fogelgaren Decl. Exhs. "A," "D," "E." Because FFB's fees were proscribed by statute and authorized by the WCB, Plaintiffs cannot plead that FFB is in possession of money belonging to them.

15

**WHEREFORE**, based upon the foregoing, FFB respectfully requests that the Court grant the instant motion.

Dated: Hawthorne, New York
January 22, 2025

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

By:  *J. Patrick Carley, III*
J. Patrick Carley, III, Esq.
Sean E. Kelly, Esq.
Seven Skyline Drive
Hawthorne, New York 10532
Telephone: (914) 347-2600
Email: pcarley@tlsslaw.com
*Attorneys for Defendants Fogelgaren, Forman & Bergman, LLP, Eric Fogelgaren, Jonathan Forman and Robert Bergman*

## WORD COUNT CERTIFICATION

I, J. Patrick Carley, III, an attorney admitted to practice before the United States District Court for the Eastern District of New York, certifies, in accordance with and pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, that the foregoing Supplemental Memorandum of Law in Support of Defendants Fogelgaren Forman & Bergman, LLP, Eric Fogelgaren, Jonathan Forman and Robert Bergman in Support of Motions to Dismiss dated January 22, 2025, contains 4,930 words, exclusive of the table of contents, table of authorities, caption and signature block, and the certification as to the foregoing relies upon the word count feature of the word-processing system used to prepare the document, Microsoft Word.

Dated: Hawthorne, New York
      January 22, 2025

           TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

           By:   *J. Patrick Carley, III*
                J. Patrick Carley, III, Esq.